## SCHLAF v. SCHLAF.

DIVORCE—ALIMONY.

A decree of divorce in favor of the wife and awarding her $600 as alimony and in lieu of dower, is modified, on appeal, by increasing the award to $900, and affirmed.

Appeal from Macomb; Reid (Neil E.), J.   Submitted April 20, 1926.   (Docket No. 165.)   Decided April 1, 1927.

Bill by Catherine Schlaf against Anthony Schlaf for a divorce.   From a decree for plaintiff respecting alimony, she appeals.   Modified and affirmed.

*Silas B. Spier*, for plaintiff.

*Bert V. Nunnelley*, for defendant.

STEERE, J.   Plaintiff obtained a decree of divorce from defendant in the Macomb county circuit court, in

Divorce, 19 C. J. § 768.

chancery, on July 6, 1925. She appeals from that portion of the decree relating to adjustment of property rights and alimony. Her bill charged as grounds for divorce extreme cruelty and failure to support. Although the formal decree finds the material facts charged in the bill of complaint to be true, the court's opinion states that while defendant was not as kind as he should have been the decree is based on the ground of nonsupport, in not properly "providing for her at his own home or at her residence which they were occupying as a home." The case was contested, defendant answering in denial with a cross-bill asking a decree of divorce on the ground of desertion.

The parties were married on June 1, 1897, at St. Peter's church in Mt. Clemens after an acquaintance of about two years. At the time of the trial she stated her age as 61 years and defendant said he was "over 60." No children were born to them. He had never previously married. Plaintiff was a widow with three daughters by her former husband, James Hoxey, who died intestate leaving an estate composed chiefly of 20 acres of land lying a short distance north of the village of Warren, Macomb county, 12 acres within the village limits, and their home consisting of a house and two lots in said village. Defendant testified that when married he had about $900. Following their marriage he went to live with plaintiff at her former home which belonged to her and her three daughters who were then respectively about 16, 14, and 13 years old. The oldest daughter married soon thereafter and never lived at the old home after her mother married again. The youngest daughter lived there about three years, attending school in Warren, then went to Detroit and took a course in a business college, paying her expenses from her share of her father's estate, thereafter supporting herself in office employment until she married. The other daughter remained longest at the old home, helping her mother

for her board, working out at times, living part of
the time with her grandfather and married not long
after she became of age.     When this bill was filed
they had all been long settled in married life with
homes and children of their own, some of them adults.
The stories told by these daughters of defendant's
treatment of their mother, and themselves when they
lived or subsequently visited her there, furnishes, if
accepted at par, good cause for her divorce on the
ground of extreme cruelty.     But accepting the trial
court's view that failure to properly support was a
firmer ground, it is at least confirmatory of plaintiff's
reasons for their separation.

That she was a frugal, industrious and faithful wife,
and cared well for their home until later years when
her health failed is fairly shown.     His lack of sym-
pathy, fault-finding and neglect of her as her health
failed apparently caused the rift impelling her to live
apart from him for several years before this bill was
filed.     Her health became impaired to a point where
she and defendant were told by her physician only a
serious surgical operation could save her life.     De-
fendant objected to this and she was obliged to mort-
gage her home to raise money for that purpose.     She
went to the home of a married daughter in Detroit
for care and medical attendance.     When notified by
her daughter that his wife was about to undergo a
serious operation he ignored the notice and did not
even go to see her until she was discharged from the
hospital and being cared for at her daughter's home.
Her recovery from the operation was slow.     She claims
to be yet in feeble health and imputes to religious af-
filiations her delay in instituting these proceedings
until finally her necessities compelled her to act.

Aside from some household effects, the property in
this controversy is the real estate left to his heirs by
James Hoxey, plaintiff's first husband.     Under her

237—Mich.—35.

then dower rights she became entitled to the use during her natural life of one-third part of all the lands of which he died seized.. So far as disclosed by this record she had never parted with that interest, by conveyance or otherwise. When the three daughters became of age they deeded their interests in the home to their mother.

On July 19, 1906, the three daughters deeded their interests in the 12 acres in the village to plaintiff and defendant as tenants by entireties for a consideration of $900, less a $200 mortgage then covering it. Some time after they came of age the two youngest daughters sold and conveyed their interests in the 20 acres outside of the village to Frank A. Langell and his wife, who was plaintiff's oldest daughter, the exact date of and consideration for which does not clearly appear. On August 19, 1913, Langell and wife conveyed this 20 acres to defendant subject to a mortgage of $750. The stated consideration in the deed is given as $1, but the agreed price actually paid by him was $900, less the amount of the mortgage, on which defendant testified $550 yet remained unpaid.

The trial court left the title of her home in plaintiff, of the 20 acres outside the village in defendant, of the 12 acres inside the village in both their names as tenants in common, and awarded plaintiff the sum of $600 as alimony and in lieu of dower, "in full satisfaction of all claims that she may have in any property which the said Anthony Schlaf owns or may hereafter own, or in which he has or may hereafter have any interest."

Defendant has had the free possession, use and enjoyment of all this property from the time he married plaintiff and established his residence in her home, where he thereafter remained through all the intervening years, after they separated as well as before, until after this suit was commenced, when, on his refusal to surrender possession, he was evicted by sum-

mary proceedings.    He used for farm purposes and cropped as he saw fit free of rent the two pieces of land consisting of 32 acres.    While he with plaintiff kept the home in fairly good repair during the time they lived together, the testimony shows that in later years he neglected it until it is run down and out of repair, with back taxes upon it.    While it belongs to plaintiff there is yet a $200 mortgage upon it, necessarily placed there by her to save her life at the time of her surgical operation.    Its value is not disclosed.

The 12 acres in the village which they owned by entireties was, as the proofs abundantly show, worth at the time of the hearing about $7,200, but she could not sell or mortgage her interest in it as the title stood.    At the time the 20 acres was conveyed to defendant by Langell and wife, the parties to this suit were living together in apparent harmony.    Plaintiff was in good health, able to do her household work and indirectly contribute more or less by her services in acquiring this property.    She was a skillful dressmaker and at that time earned considerable money from others in that line of work.    The 20 acres owned by defendant and by the decree relieved of dower is shown to be worth about $5,000, subject to an incumbrance upon it of $550.    Her dower interest in that property under her first husband gave her the use for life of an undivided one-third aside from her inchoate dower right in defendant's title.    Under the facts disclosed by this record, considered as a whole, we are of opinion that the allowance to plaintiff should be increased to $900 and made a lien upon defendant's real estate.

So modified, the decree will stand affirmed, with costs to plaintiff.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.